UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COLONY INSURANCE COMPANY,

       Plaintiff,

v.                          CASE NO:  8:09-CV-776-T-33TGW

SUNCOAST MEDICAL CLINIC, LLC,
et al.,

       Defendants.

_____/

**<u>ORDER</u>**

This cause comes before the Court pursuant to Plaintiff
Colony Insurance Company's ("Colony") Motion for Summary
Judgment (Doc. # 40), Defendant Suncoast Medical Clinic's
("Suncoast") Motion for Summary Judgment as to Count II of the
Complaint (Doc. # 42), and Suncoast's Motion for Summary
Judgment as to its Amended Counter-Claim (Doc. # 43).

I.   <u>BACKGROUND</u>

Plaintiff Colony, an excess and surplus lines insurer
issuing insurance policies in Florida, issued a Commercial
General Liability Policy Number GL3174296 ("Policy") to
Defendant Suncoast in exchange for reasonable consideration.
The effective dates of the policy were from May 3, 2005 to May
3, 2006. The Policy insured Suncoast against any loss or

liability occurring as a result of bodily injury to a third person, providing an Each Occurrence Limit of $1,000,000 and a General Aggregate Limit of $2,000,000. The Policy also contained two endorsements that excluded coverage for injuries to third persons arising out of "the rendering or failure to render . . . [m]edical, surgical, dental, x-ray or nursing service, treatment, advice or instruction . . . [or] any health or therapeutic service, treatment, advice or instruction. . . . " (Doc. # 40 Exh. 1)("Exclusions").

While under the care of Suncoast physicians George Ettel and Ignacio Sotolongo, Charles J. Ziolkowski died from alleged liver cancer on or about October 18, 2006. As a result of her husband's death, Defendant Colleen Ziolkowski initiated a wrongful death and medical malpractice action against Suncoast, Ettel, and Sotolongo on or about August 22, 2008 (Doc. # 40 Exh. 2)(the "Lawsuit"). In pertinent part, the Lawsuit alleged the following:

> 13. At all times material hereto, Defendant, Suncoast, owed Decedent, Charles Ziolkowski, non-delegable duties to provide medical services consistent with its undertaking to provide health clinic-based care, including, but not limited to, the provision of doctors, nurses, pathology, laboratory testing, radiology studies, pharmacy, and other types of services.

> 14. On March 21, 2003, while under the care of his primary care physician, Ettel, Decedent, Charles Ziolkowski, underwent a CT scan of the abdomen that

revealed a one centimeter low-density lesion on the liver.

15.     On July 22, 2003, a follow-up CT scan of the abdomen, ordered by Ettel, revealed that the liver lesion had grown to two centimeters and had a slight wedge shaped configuration.

16.     During the time period from July 2003 through October 2005, Decedent, Charles Ziolkowski had no further follow-up or treatment for the growing liver lesion despite being under the continued care of Suncoast and Ettel.

* * * *

18.     On or about October 31, 2005, Charles J. Ziolkowski, underwent a retroperitoneal ultrasound ordered by Sotolongo. The ultrasound revealed that the liver mass had now grown to two separate masses, the largest one measuring 4.5 cm and the second lesion measuring one centimeter.

19.     During the time period from October 2005 through July 2006, Decedent, Charles Ziolkowski had no further follow-up treatment for the growing liver lesion despite being under the continued care of Suncoast, Ettel, and Sotolongo.

* * * *

22.     On August 14, 2006, Mr. Ziolkowski was diagnosed with pleomorphic liposarcoma (cancer).

23.     Decedent, Charles J. Ziolkowski, suffered further complications of liver cancer and eventually died on October 18, 2006 at the age of 67.

* * * *

25.     At all material times, the Defendant, Suncoast, by and through its employees and/or agents, owed Charles J. Ziolkowski non-delegable duties to provide medical care, treatment, and services, which met the prevailing professional standard of care for health care providers.

26.      That Defendant, Suncoast, by and through its employees and/or agents, deviated from the prevailing professional standard of care and breached the duty owed to Charles J. Ziolkowski, including, but not limited to one of more of the following ways:

(a) Failure to timely evaluate changes in the patient's condition, and to document changes in his condition;

(b) Failure to recognize the patient's evolving condition;

(c) Failure to timely order and perform diagnostic studies and interventions;

(d) Failure to evaluate and follow up on diagnostic tests on a timely basis and to bring the reported values to the attention of the involved treating physicians;

(e) Failure to timely and properly communicate with other health care providers;

(f) Failure to treat Plaintiff's condition so as to prevent his subsequent death;

(g) **Failure to have in place sufficient policies and procedures, staff, and assistive technology to ensure that diagnostic tests and communication between physicians and other medical personnel was performed**; and

(h)   Failure to use that level of care, skill, and treatment of which, in light of the relevant surrounding circumstances is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

27.      As the clinic affording privileges to and exercising sufficient control over all physicians and healthcare providers involved in the care and treatment of Charles J. Ziolkowski, and/or as the employer of same, and/or as the apparent principle holding out the totality

4

of care afforded Decedent in the clinical setting, the performance of which by Suncoast was relied upon by Decedent when selecting Suncoast for his care and treatment thereby creating, at least, an apparent agency, Suncoast is vicariously liable for any violation of a standard of care as described herein.

28.      As a direct and proximate result of the foregoing, Charles J. Ziolkowski died on October 18, 2006.

* * * *

(Doc. # 40 Exh. 2)(emphasis added).

After receiving notice of Ziolkowski's claim, Suncoast demanded that Colony defend and indemnify Suncoast in the action.  Colony denied it had a duty to defend or indemnify Suncoast, asserting that the Exclusions precluded coverage for bodily injury arising out of "the rendering or failure to render medical, surgical, treatment, advice or instruction" in connection with services provided by health care providers.

After the parties in the underlying lawsuit, including Suncoast, Ettel, Sotolongo, and Ziolkowski, reached a Settlement Agreement, a Florida court entered a Final Judgment against Suncoast awarding Ziolkowski $750,000 in accordance with the terms of the Settlement Agreement.

On the grounds that the Policy Exclusion precludes coverage, Colony now seeks a declaration that it owes no duty to defend or indemnify Suncoast for claims arising from the

injuries and death of Charles Ziolkowski, for which Suncoast, Ettel, and Sotolongo were alleged to be liable.  Suncoast asserts that because Ziolkowski alleged that her husband's injuries and death resulted in part from deficient business practices, which are covered under the Policy, rather than from medical services, which are specifically excluded under the Policy, Colony wrongfully denied its duty to defend and indemnify Suncoast against Ziolkowski's claims.  Specifically, Suncoast asserts that Ziolkowski's allegation that her husband's injuries and death were caused by Suncoast's "[f]ailure to have in place sufficient policies and procedures, staff, and assistive technology to ensure that diagnostic tests and communication between physicians and other medical personnel was performed" implicated purely administrative business practices completely independent of the provision of medical services and therefore was covered under the Policy.

II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590,

7

593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

Summary judgment is appropriate in an action seeking a declaration of coverage, when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law. <u>Northland Cas. Co. v. HBE Corp.</u>, 160 F. Supp. 2d 1348, 1357-58 (M.D. Fla. 2001). When the jurisdiction of the court is based

on diversity of citizenship and the policy was issued in Florida, as is the case here, the district court must look to the substantive law in Florida for guidance in interpreting the policy.[1] <u>Lazzara Oil Co. v. Columbia Cas. Co.</u>, 683 F. Supp. 777, 779 (N.D. Fla. 1988).

III. <u>ANALYSIS</u>

The question before the Court is whether or not Ziolkowski's allegation in the underlying complaint that Suncoast deviated from the prevailing professional standard of care and breached its duty owed Charles J. Ziolkowski when it failed "to have in place sufficient policies and procedures, staff, and assistive technology to ensure that diagnostic tests and communication between physicians and other medical personnel was performed" triggers the Colony Policy Exclusions that bar insurance coverage for bodily injury arising from the rendering or failure to render medical services or treatment. Under Florida law, an insurance contract should be construed according to the "plain language" of the insurance contract.

---

[1] While the Court recognizes that it must look to the substantive law in Florida for guidance in interpreting the policy, the Court notes that the parties' motions contain minimal citation to meaningful Florida substantive law as the facts of this case present a highly unusual set of circumstances. Accordingly, this Court is left to consider case law from other jurisdictions.

<u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So. 2d 29, 34 (Fla. 2000).  "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous."  <u>Id.</u>  The Court finds that in this case, the Policy language is not ambiguous.  The relevant provisions of the policy are as follows:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * * *

SECTION I — COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

> a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * * *

2.  Exclusions

* * * *

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EXCLUSION — SERVICES FURNISHED BY HEALTH CARE PROVIDERS

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

* * * *

The following exclusion is added to Paragraph **2.**, **Exclusions of Section I — Coverage A — Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions of Section I — Coverage B — Personal and Advertising Injury Liability**:

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.   The rendering or failure to render:

    a.   Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

    b.   Any health or therapeutic service, treatment, advice or instruction.

* * * *

2.   The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

* * * *

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

MISCELLANEOUS EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

* * * *

B.   SECTION I — COVERAGES, COVERAGE A BODILY INJURY 2. Exclusions and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions are amended and the following are added:

* * * *

EXCLUSION — PROFESSIONAL SERVICES

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional service" means:

* * * *

(4)     Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

(5)     Any health or therapeutic service, treatment, advice or instruction;

* * * *

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

* * * *

The plain language of the Policy requires Colony to pay on behalf of Suncoast all sums Suncoast becomes legally obligated to pay as "damages" because of "bodily injury" to which the insurance applies. The Policy also imposes on Colony a "duty to defend" Suncoast against any "suit" seeking damages for bodily injury, but clearly eliminates the duty to defend against suits seeking damages for bodily injury to which the insurance does not apply. The relevant Policy Exclusions make the insurance inapplicable to bodily injuries arising from the rendering or failure to render medical service, treatment, advice, or instruction.

Colony contends that it does not owe Suncoast a duty to defend or indemnify Suncoast against the claims brought by Ziolkowski because all of Ziolkowski's allegations allege negligence in the provision of medical services and treatment, thereby triggering the Exclusions. Suncoast argues that Colony owes Suncoast a duty to defend and indemnify it against Ziolkowski's claims because in Paragraph 26(g) of the underlying complaint, Ziolkowski alleged that Suncoast breached the duty it owed Charles J. Ziolkowski by its "failure to have in place sufficient policies and procedures, staff, and assistive technology to ensure" the performance of diagnostic tests and communication among medical staff,

implicating purely administrative business practices that are not an intricate part of the rendering of medical services.

Based on Florida law and the law of other jurisdictions that the Court finds persuasive, the Court agrees with Colony's contention that Ziolkowski's allegations and the facts of this case trigger the Exclusions that bar coverage for bodily injury arising from the rendering or failure to render medical services, treatment, advice or instruction because Suncoast's alleged failure to have in place adequate policies, procedures, staff and assistive technology to ensure performance of diagnostic tests and communication between medical personnel was an intricate part of the medical services provided by Suncoast, Dr. Ettel and Dr. Sotolongo.

**A.    The allegation in question implicates medical services, thereby precluding coverage.**

Because hiring staff, purchasing assistive technology and establishing and implementing policies and procedures governing diagnostic testing and communication among medical staff are an intricate part of the professional medical services Suncoast provided to Charles J. Ziolkowski, Ziolkowski's allegation that Suncoast failed to have in place such policies and procedures, staff, and assistive technology triggers the Policy Exclusions barring coverage.

Administrative functions that are an intricate part of the provision of medical services implicate insurance policy provisions precluding coverage for bodily injury arising out of the rendering or failure to render medical services or treatment. The United States Court of Appeals for the Eleventh Circuit held that a medical technician lacking professional training was performing a professional medical service when she made a transcribing error that resulted in injuries from the distribution of contaminated plasma. Alpha Therapeutic Corp. v. St. Paul Fire & Marine Ins. Co., 890 F.2d 368, 371 (11th Cir. 1989). Reasoning that "[m]ost professional medical services involve clerical or ministerial duties that courts typically consider as an intricate part of the professional service," id. at n. 6, the Eleventh Circuit held that because the medical technician's error was committed while she was performing medical services, her action triggered a professional services exclusion that precluded coverage for injuries caused by the rendering of medical services. Id.

The Court finds decisions regarding hiring medical staff, purchasing diagnostic technology, and establishing policies and procedures for diagnostic testing and communication among medical staff are even more integral to the provision of

medical services than the administrative task of transcription that the Eleventh Circuit held barred coverage.

Moreover, the Court finds extremely persuasive and chooses to follow a decision on point by the United States District Court for the District of Puerto Rico. In <u>Alayon del Valle v. Kenyon</u>, the court granted summary judgment in favor of the insurer where the underlying complaint alleged the insured medical director's failure to establish adequate screening protocols caused the patient's injury. <u>Kenyon</u>, 2009 WL 3299373, at *3 (D. Puerto Rico Oct. 9, 2009). The insured, Kenyon, argued that his work as the medical director of an office providing Lasik surgery was purely administrative and required no specialized skills, therefore the medical services exclusion did not apply to bar coverage. However, the court disagreed, finding that the medical director's duties, which included "quality management, patient safety, . . . physician training and credentialing, utilization management and medical policies, and establishment and implementation of adequate protocols and procedures," were "directly involved in the provision of services and require[d] the application of medical expertise." <u>Id.</u> Based on this finding, the court held the director's alleged failure to establish screening protocols triggered the exclusion barring coverage for

injuries arising from the rendering or failure to render medical services. Id.

Like the insured in Kenyon, Suncoast argues that its alleged failure to have in place policies and procedures, staff, and assistive technology to ensure the performance of diagnostic tests and communication among medical staff implicates "Deficient Business Practices" completely independent of the provision of medical services. It claims that the business practices in question required no professional skill, and, therefore, injuries arising from them cannot be excluded by the medical or professional services exclusions.

The Court finds Suncoast's argument unpersuasive. Decisions about hiring medical staff, purchasing diagnostic technology, and establishing diagnostic testing procedures and communication protocols for a medical facility by definition require the application of medical expertise. Without the application of medical skill, decisions regarding these matters would be ineffective if not disastrous. Such decisions are so integral to the provision of medical services and treatment that they cannot be unbundled; therefore, they trigger the Colony Policy Exclusions that preclude coverage for injuries arising from Suncoast's rendering or failure to

render medical services and treatment. Because Ziolkowski's allegation triggers the Policy Exclusions, Colony need not provide coverage for Ziolkowski's alleged injuries.

**B. Colony has no duty to indemnify Suncoast against Ziolkowski's claims.**

Suncoast argues that based on Ziolkowski's "Deficient Business Practices" allegation, Colony had a duty to defend Suncoast in the underlying lawsuit. Under Florida law, an "insurer's duty to defend is distinct from and broader than its duty to indemnify." Estate of Tinervin v. Nationwide Mut. Ins. Co., 23 So.3d 1232, 1238 (Fla. 4th DCA 2009) (quoting Keen v. Fla. Sheriff's Self-Ins. Fund, 962 So.2d 1021, 1024 (Fla. 4th DCA 2007)). The allegations in the underlying complaint alone determine the duty to defend. Id. The insurer must defend the insured if the complaint "set[s] forth facts that bring the case within the coverage of the policy," id., even if the facts alleged are actually untrue, Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995).

In a case where the act at issue is ultimately found to be a medical service that bars coverage, insurers still have a duty to defend if the allegations in the underlying complaint do not implicate medical services. In Estate of

<u>Tinervin v. Nationwide Mutual Insurance Company</u>, the Fourth District Court of Appeal of Florida held that an insurer had a duty to defend an insured physician where the underlying complaint alleged general negligence against the physician's employee, who misfiled lab results, an act which allegedly led to the patient's death. <u>Tinervin</u>, 23 So.3d at 1238. Although the court ultimately found the employee was a medical assistant whose duties included the rendering of medical services, the allegations indicated only that "in a non-professional manner, the employee negligently

> a) made clerical mistakes in the filing of significant laboratory results for Steven Tinervin;
>
> b) lost, misplaced, or untimely filed significant laboratory results for Steven Tinervin;
>
> c) failed to forward or show the laboratory results of Steven Tinervin to her husband Dr. Gonzales;
>
> d) read the previously obtained laboratory results during the May 2005 office visit and negligently told the physician that they were normal; and
>
> e) was otherwise negligent in her non-professional office duties owed to Steven Tinervin."

<u>Id.</u> The court held that these allegations "squarely fell within the policy's duty to defend," and reasoned that it was only "after the facts were flushed out in discovery that the

duty to indemnify was found not to exist."  <u>Id.</u>

The facts at issue in the instant case are distinguishable from those in <u>Tinervin</u> in that here, the facts alleged by Ziolkowski fall squarely within the Policy Exclusions that bar coverage for bodily injuries arising from the rendering or failure to render medical services or treatment.  Unlike the <u>Tinervin</u> complaint, which alleged negligence in the performance of non-professional office duties, Ziolkowski's complaint alleges that Charles J. Ziolkowski's injuries and subsequent death arose from Suncoast's "failure to have in place policies and procedures, staff, and assistive technology" that would ensure the performance of diagnostic tests and communication among medical staff.  Although in its Motion for Summary Judgment (Doc. # 42) Suncoast attempts to recast this allegation as non-medical by labeling it the "Deficient Business Practices" allegation, no such label appeared in the underlying complaint, and moreover the true nature of the allegation cannot be disguised by a label.

As the Court has already concluded, Ziolkowski's "Deficient Business Practices" allegation does not herald ordinary business practices, but rather clearly implicates decisions requiring medical skill that are integral to the

provision of medical services or treatment at a medical facility. Because Ziolkowski's "Deficient Business Practices" allegation actually implicates medical services, the medical services Exclusions apply, and the allegation falls squarely outside Colony's duty to defend.

### C. Duty to Indemnify

Suncoast argues that because it entered a Settlement Agreement in which it agreed that a jury would reasonably find Suncoast 30% at fault for non-medical services, Colony owes a duty to indemnify Suncoast for the amount specified in the settlement agreement — $750,000. To support its argument, Suncoast cites <u>Northland Casualty Company v. HBE Corporation</u>, where the Court noted that "the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement." <u>Northland</u>, 160 F. Supp. 2d at 1360.

But in <u>Northland</u>, the Court also stated the rule: "Unless the insured can demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify whatsoever." <u>Id.</u> In this case, Suncoast has not demonstrated that it suffered a covered loss, therefore Colony has no duty to indemnify it. A mere reference to "non-medical services" in a Settlement Agreement to which Colony was not a party does not demonstrate coverage, particularly when the only relevant

allegation in the underlying complaint references services that the Court has established are clearly medical. Because the Court has already determined that the only relevant allegation — that Suncoast breached its duty to Charles J. Ziolkowski through its "failure to have in place policies and procedures, staff, and assistive technology to ensure that diagnostic tests and communication between physicians and other medical personnel was performed" — implicated medical services or treatment, thereby precluding coverage under the Policy, the Court holds that Colony has no duty to indemnify Suncoast for the amount Suncoast agreed to pay to settle Ziolkowski's claim.

### D. Breach of Contract

In its Motion for Summary Judgment on its Amended Counter-Claim (Doc. #43) Suncoast argues that because Colony refused to defend or indemnify it against Ziolkowski's claims, Colony breached the insurance contract it entered with Suncoast as a matter of law. However, because the Court has determined that Colony had no duty to defend or indemnify Suncoast against Ziolkowski's claims, the Court holds that Colony did not breach the insurance contract.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Plaintiff's Motion for Summary Judgment (Doc. # 40) is **GRANTED.**

(2)   Defendant's Motion for Summary Judgment on Count II of Plaintiff's Complaint (Doc. # 42) is **DENIED**.

(3)   Defendant's Motion for Summary Judgment on Defendant's Amended Counter-Claim (Doc. # 43) is **DENIED**.

(4)   Defendant's Motion to Strike Colony's Response to Motion for Summary Judgment on Defendant's Amended Counter-Claim and on Count II of Plaintiff's Complaint (Doc. # 49) is **DENIED**.

(5)   Plaintiff's Motion to Sever (Doc. # 58) is **DENIED AS MOOT**.

(6)   The Clerk is directed to enter judgment in favor of Plaintiff Colony Insurance Company as against Defendant Suncoast Medical Clinic.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 20th day of July, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

23

Copies:

All Counsel of Record